v.

Boyd MILLER et al., etc., Appellees.

Court of Appeals of Kentucky.

Oct. 25, 1957.

R. T. WAGNER, Appellant,

v.

FISCAL COURT OF JESSAMINE COUNTY,
Kentucky, et al., Appellees.

Court of Appeals of Kentucky.

Oct. 25, 1957.

Eldon S. Dummitt, Alvin B. Trigg, E. F. Prichard, Jr., Lexington, for appellant.

B. T. Moynaham, Jr., and W. H. Mackey, Nicholasville, Gordon B. Davidson and Cornelius W. Grafton, Louisville, for appellees.

CULLEN, Commissioner.

R. T. Wagner brought action against the fiscal court of Jessamine County, and the school board of the county, attacking the validity of a proposed revenue bond issue for construction of a high school building. The court entered judgment dismissing the complaint on the ground that it failed to state a claim upon which relief could be granted. Wagner appeals.

Wagner brought the action in the capacity of an owner of one of the bonds of a previous revenue bond issue of Jessamine County for school construction. His complaint, in substance, was that the school board did not have adequate sources of revenue to meet the combined requirements of the old and new bond issues, that the proposed new issue would bankrupt the school system, and the value of his bond thus would be impaired.

The original bonds, one of which Wagner owns, were issued in 1950, in accordance with the plan prescribed in KRS 162.120 to 162.290 (made applicable to county school districts by KRS 162.300). Under this plan the school board conveys a tract of land to the fiscal court, which issues bonds and constructs the school building. The building then is leased to the school board, by the fiscal court, for *one year,* with option to renew for successive one-year periods. When sufficient rentals have been paid over a period of years the school board acquires title to the land and building. The bonds, issued by the *county,* are payable solely out of the rental revenues received, and are secured by a lien on the land and buildings.

The proposed new bond issue will follow the same plan. However, it involves a completely separate tract of land, and this tract, with the building to be erected upon it, will have no connection with the tract and building covered by the previous bond issue. The two projects are entirely independent of each other, except to the extent that the school board is the potential lessee of both buildings.

Wagner concedes that from a strict legal standpoint his bond does not constitute an indebtedness of the school board, he is not a creditor of the school board, and his only security is the building and the rents to be received from it. However, he maintains that the whole revenue bond plan rests upon the contemplation that the school board will continue to rent the building, and since the building is for all practical purposes valueless except for school purposes, he has only a fictitious security unless the school board maintains the school system upon a solvent basis so as to be able to pay the building rentals. This argument appears to be just another instance of an effort to attach to revenue bonds the legal consequences of general obligation bonds. See Board of Education of Fayette County v. Board of Education of Lexington Independent School District, Ky., 250 S.W.2d 1017.

The revenue bond plan for school construction has been upheld only on the basis that the bonds do not constitute a general obligation of the school district, and that the school board does not at any time bind itself to rent the building for more than one year. Davis v. Board of Education of City of Newport, 260 Ky. 294, 83 S.W.2d 34. As we said in the Fayette County case, cited above, the bondholders "are not entitled to place faith and credit in any tax resources of the governmental unit * * * as a legal matter they are not entitled to rely upon any tax resources" (250 S.W.2d 1017, at page 1021).

The Jessamine County Board of Education has no obligation, under either the old or new bond issue, to rent the buildings involved for more than one year. In legal contemplation, the board could abandon both buildings at the end of any year. This is a risk the bondholders take. Accordingly, there is no basis upon which a bondholder can be concerned with the future financial status of the school system, for if he cannot compel the school board to rent, he cannot compel the board to so maintain its financial position as to be able to rent.

Wagner places considerable reliance upon Bell v. Board of Education of Shelby County, 308 Ky. 848, 215 S.W.2d 1007, in which it was held that a *taxpayer* could attack the issuance of school revenue bonds on the ground that the undertaking would be financially unsound. However, this was based on the concept that taxpayers, being ultimately responsible for producing the revenues required for operation of the school system, have a direct concern in the financial soundness of the system.

Wagner does not sue as a taxpayer. (It appears from the answer that this may be because, in a previous suit attacking this bond issue brought by a taxpayer, judgment was entered holding the issue valid.) It is our opinion that Wagner, as a bondholder, has not pleaded a violation of any of his protectible rights.

Some contention is made that the question is really one of Wagner's *capacity to sue,* and that the issue of lack of capacity was not properly raised in accordance with CR 9.01. However, the question is not whether Wagner had capacity to sue, but whether he pleaded a protectible right. See DeFranco v. U. S., D.C.Cal. 1955, 18 F.R.D. 156. This question properly was raised by the motion to dismiss for failure to state a claim upon which relief could be granted.

The judgment is affirmed.