## Sizemore v. Clay County et al.

(Decided May 21, 1937.)

A. D. HALL for appellant.

WILLIAM RICE and ROY W. HOUSE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On January 20, 1936, the courthouse in Manchester, Clay County, Ky., was destroyed by fire. Seventy-five hundred dollars of insurance was collected by the

county, but it was wholly insufficient to construct a suitable courthouse and supply its furniture equipment. The county was then and now carrying a bonded indebtedness to the maximum limit of its constitutional authority and the revenues that the county could constitutionally raise by taxation were insufficient to produce an annual sum, over and above the amount necessary for governmental purposes, to defray the expenses of reconstructing the courthouse. In the emergency the fiscal officers of the county, by duly adopted resolution, proposed to meet the diffiiculty by raising $20,-000—the amount deemed necessary to supplement what it had or could otherwise raise—so as to produce a sufficient amount to acquire the courthouse and its necessary equipment, by invoking the plan approved by this court in many prior cases, some of which are: Waller v. Georgetown Board of Education, 209 Ky. 726, 273 S. W. 498; Jesse Whitworth v. Breckinridge County Board of Education et al., 225 Ky. 222, 7 S. W. (2d) 1070; Bellamy v. Board of Education of Ohio County et al., 255 Ky. 447, 74 S. W. (2d) 920.

The plan adopted and approved by us in the cases referred to, and others of like tenor, was and is to this effect—that the particular subordinate governmental unit might convey its real estate to a third person (who could be a corporation organized for the purpose) who would take the title with the power and authority to borrow the sum needed by the governmental unit, and issue bonds to run for an agreed period as evidence thereof, with a mortgage on the property so conveyed for that purpose to secure the indebtedness with interest. The third person to then rent the property—after the bonds had been so issued and secured —to the involved governmental unit for its use for a period of one year, with the option given it to renew its lease each year thereafter at an agreed annual rental estimated to be sufficient to keep the property in repair, to keep it insured, and to produce a fund sufficient to meet the annual maturing bond or bonds with interest on the unpaid balance of the debt, and if the rental was so renewed and the bonds eventually paid according to the plan, the property would then be reconveyed by such third person to the particular governmental unit.

All of the steps for maturing that plan were duly

taken and executed in this case, plus the further agreement that the third person (which was a corporation organized for the purpose and known as Anderson Public Service Corporation) would execute a second mortgage to the county to secure it in the various rental payments that it might make. When the plan was completed, and all of the papers necessary to carry it out were duly executed the appellant (a taxpayer), as plaintiff below, filed this declaratory judgment action against the county and its necessary officers in which he (for himself and all other taxpayers) sought an injunction to prevent the carrying out of the plan upon the ground, as he alleged, that it was unauthorized, invalid, and void for the same reasons heretofore urged in prior cases against the approval of the same plan as applied to other subordinate governmental units than a county. An additional ground presented and urged in the petition was, and is, that, although the plan might be valid as applied to subordinate governmental units, other than a county, yet it (county) is without authority to invoke the plan; and by which an attempted distinction is sought to be drawn in such respects as between the right of a county and that of all other subordinate governmental units to adopt the plan. No authority is cited in support of that distinction and we have been unable to find any after a most diligent search. On the contrary, the only sections of our Constitution that could have any possible bearing upon the question are 157 and 158. Each of them, in dealing with the question of indebtedness, groups the subordinate governmental units to which those sections apply as counties, cities, towns, taxing districts, or other municipalities. No distinction is made between them, and they all occupy the same status and are under the same restraints created by those sections. The classes heretofore involved in litigation—in which the proposed plan was adopted—were cities, taxing districts, and boards of education; but we have found no case wherein a county attempted to adopt the plan to meet its emergency. Wheresoever the plan has been approved by us, the particular governmental unit involved had statutory right to sell its property by its duly constituted authorities, and section 927 of our present Statutes (Baldwin's 1936 Revision of Carroll's Kentucky Statutes) expressly authorizes a county to sell and convey "any land or real estate belonging to

the respective counties of this Commonwealth." There is, therefore, no lack of authority in Clay county to sell its courthouse grounds to whomsoever it pleases, and we can conceive of no reason why it may not do so to accomplish the purpose indicated, so as to reap the benefits thereof and meet its pending emergency, the same as is permitted to its associate governmental units in the two sections of the Constitution referred to.

It is alleged and proven that, while Clay County is bonded to its constitutional limit, and while the maximum allowed rate of taxation will not raise enough funds in any particular year to meet the entire requirements of Clay County in this case, yet the annual rental agreed to be paid under the arrangements adopted, plus the necessary governmental expenses of the county, will not exceed the total amount of revenue that can and will be provided for each year from the amount of the assessed valuation of all property in the county, which is also given. Of course, if such rental, plus the necessary governmental expenses, would exceed the amount that could be raised any year, a curtailment of the total amount would be necessary or the surplus over and above what is or could be raised would be void. But under the showing made in the record before us no such excess will be incurred, if imposed restrictions are observed.

The trial court dismissed the petition, and no reason has been assigned why we should withhold our assent thereto. For the reasons stated, the judgment is affirmed.